UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREG ALLEN WINER,

                    Petitioner,

                                                    CASE NO. 2:09-CV-10192
v.                                                  HONORABLE GERALD E. ROSEN

HUGH WOLFENBARGER,

                    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS,  DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.     Introduction**

        This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Greg Allen

Winer ("Petitioner") was convicted of one count of first-degree criminal sexual conduct, MICH.

COMP. LAWS § 750.520b, and three counts of second-degree criminal sexual conduct, MICH. COMP.

LAWS § 750.520c, following a jury trial in the Oakland County Circuit Court and was sentenced to

concurrent terms of 15 to 40 years imprisonment and 10 to 15 years imprisonment on those

convictions.  In his pleadings, Petitioner raises claims concerning the effectiveness of trial and

appellate counsel, the exclusion of certain expert testimony, and the admission of rebuttal testimony

and a suicide reference.  For the reasons set forth, the Court denies the petition for a writ of habeas

corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma*

*pauperis* on appeal.

1

II.    **Facts and Procedural History**

Petitioner's convictions arise from the sexual assault of his nine-year-old step-daughter at their home in Royal Oak, Michigan in 2003.  The victim testified that the sexual abuse occurred in the mornings before school after her mother left for work and her step-brother left for middle school. The incidents occurred in Petitioner's and her mother's upstairs bedroom when she went to wake up Petitioner or take the dog out before school.  The victim testified that she got into bed with Petitioner and he touched her private area, rubbing his fingers in a circular motion and sometimes used a blue gel from the nightstand.  She also testified that Petitioner put his penis in her mouth and touched or rubbed her private area with his penis.  She described his penis as having veins and being round with a hole on top.  The victim testified that she did not tell her mom about the incidents because she was scared, she did not want to get into trouble, and she did not know what would happen if she told.

On cross-examination, the victim testified that she had sex education class at school.  She said that she never put a note in the "private box" or told her teacher that she had been sexually abused.  She could not recall how she got into Petitioner's bed each time.  She initially stated that she could not remember telling her mother that she saw part of an x-rated movie at her grandmother's home, and then denied seeing such a movie.  She also denied seeing a penis-like object in the playroom and denied reporting that the abuse occurred in the attic.  She admitted that she twice denied being abused when questioned by her mother and admitted that she lied when she told her kindergarten teacher that her mother was pregnant with twins.

The victim's mother, Tanya Winer, testified that she met Petitioner while living with her daughter and her mother in Hazel Park.  They moved to Oak Park to live with Petitioner in 1997.

2

They moved to Royal Oak with Petitioner and his son in September, 2002.  Mrs. Winer first learned of the sexual abuse on January 22, 2004 after watching an Oprah Winfrey show about childhood sexual abuse and questioning her daughter.  Mrs. Winer said that her daughter initially denied that anyone had touched her inappropriately, but Mrs. Winer did not believe that she was telling the truth because she looked away when she said it.  Mrs. Winer persisted in questioning her daughter, at one point telling her that if she did not tell the truth, she (Mrs. Winer) could die.  Her daughter said that she did not want to talk about it, but eventually admitted that Petitioner had sexually abused her.  Her daughter explained that he had touched her private area with his fingers and put his penis in her mouth.  Mrs. Winer confirmed that she kept a blue gel on her nightstand for sexual use and testified that Petitioner also rubbed her private area with the gel, using a circular motion.  At the end of their discussion, Mrs. Winer told her daughter to clean up and not to say anything, and assured her that she would take care of the situation.  After the children went to bed that evening, Mrs. Winer confronted Petitioner about the abuse allegations.  He responded, "What, I can't believe this."

Mrs. Winer kept her daughter home on another school day so that they could talk more in private.  Mrs. Winer asked her daughter to describe what happened again.  She then decided to record their conversation because she was concerned that she might not remember everything and she wanted people to be aware of her questions and her daughter's responses.  The recording was played for the jury, and both the recording and a transcript were admitted into evidence.

Mrs. Winer further testified that she played the recording for Petitioner when he returned home.  She asked him whether he would say that her daughter was lying.  He replied, "No," stating that he believed her, but he did not do it.  Petitioner asked to talk to the victim.  The three of them talked in the living room.  Her daughter seemed nervous and scared.  Mrs. Winer recorded their

conversation.  The recording was played for the jury.  Mrs. Winer and Petitioner had subsequent conversations about the situation.  Petitioner continued to say that he believed the victim but did not do it, and suggested counseling.  A few day later, Mrs. Winer discussed the matter with a doctor at work, and he suggested that she call social services.  Mrs. Winer told Petitioner that she planned on reporting the abuse that afternoon and called social services.  Petitioner moved out of the home.  He subsequently called Mrs. Winer and they reviewed computer printouts on "sleep sex" as a possible explanation for what had happened.  He said that he did not want to hurt anyone and seemed depressed.  During a conversation on February 11, 2004, he told her that if anything happened to him, she should tell the children he was in a car accident.  Mrs. Winer and her daughter moved back to Hazel Park to live with her mother in April, 2004.

On cross-examination, Mrs. Winer testified that her daughter had sex education at school and that students were able to put a note into a private box if they had been sexually abused.  She said that she was aware that her daughter had viewed an x-rated movie at her grandmother's home.  She also testified that she kept a penis-like dildo in a box in her bedroom and that, near the time of the sexual abuse allegations, Petitioner found the dildo in the children's playroom.  She spoke to the children about it.  Mrs. Winer was not aware of any sexual abuse in Oak Park or in the attic.  She indicated that she had concerns about her daughter's biological father and did not trust him, but was not further questioned about the matter.

Royal Oak Police Detective Frank Bonnette testified that he received a report from protective services about the sexual abuse on January 28, 2004.  An interview at Care House was conducted on February 5, 2004.  Police and the prosecutor were able to observe the interview through a one-way mirror.  On cross-examination, Detective Bonnette acknowledged that the Care House reports

4

indicated that the victim said she was sexually assaulted in the attic, not the bedroom, and that she initially reported that the incidents occurred in Oak Park, not Royal Oak.

Petitioner testified in his own defense at trial. He described the family's morning routine and said that there was no reason for his step-daughter to come up to his bedroom in the morning. He denied sexually abusing her or touching her inappropriately. He recalled finding his wife's dildo in the playroom and returning it to her. When she questioned the children about it, they knew what it was and admitted touching it, but did not say who took it from the bedroom. Petitioner recalled being confronted with the sexual abuse allegations, listening to the recorded conversation, and speaking with his wife and step-daughter to determine why she would make up such a story. Petitioner said that his step-daughter wanted to live in Hazel Park near her friends and that she may have felt less important in her mom's life due to their step-family situation.

Michael Reynolds, Director of Technical and Planning Services for Oak Park, testified that he hired Petitioner to work as a code inspector in 1997, that Petitioner worked for him for six years, and that Petitioner was promoted to a supervisory position. Reynolds also testified that Petitioner had a reputation for truth and honesty in the community.

Petitioner also presented two expert witnesses at trial. Dr. Katherine Okla testified as a defense expert in clinical psychology. She reviewed the taped recordings, police reports, Care House file, and preliminary examination transcript in this case. She explained that how the interview process can affect what a child says and remembers and said that sexual abuse interviews should be conducted in a neutral place by properly-trained professional using open-ended questions. Dr. Okla noted that there was no record of Mrs. Winer's first conversation with her daughter, so there was no way to determine the propriety of her questions. Dr. Okla expressed concerns about

the second, recorded conversation because Mrs. Winer did not ask open-ended questions, she repeated questions, she injected emotional issues, and she was the child's mother.  Dr. Okla also testified that family issues can affect a child's motivation for saying things, and explained that having a new step-family, moving, and changing schools can be stressful for a child.  On cross-examination, Dr. Okla acknowledged that the victim corrected her mother several times during their recorded conversation.

Dr. Michael Abramsky testified as a defense expert in clinical and forensic psychology.  He wrote an article about criminal profiling in sexual assault cases.  He interviewed Petitioner and conducted standardized personality testing on him.  Dr. Abramsky opined that those tests indicated that Petitioner did not possess a "character logical deviance, that is ingrained maladaptive patterns of being either assaultive or aggressive."  Dr. Abramsky also discussed the three types of sexual predators - pedophiles who have exclusive interest in children, sexual predators who are anti-social, and situational actors who commit one-time crimes under unique circumstances.  Defense counsel attempted to elicit Dr. Abramsky's opinion about whether Petitioner fit any of those profiles, but the trial court would not allow it.  On cross-examination, Dr. Abramsky acknowledged that child molesters usually choose a private location and commit numerous acts before being caught, and that children are usually molested by someone close to them and often do not understand the wrongfulness of such conduct.

In rebuttal, the prosecution called Amy Allen, a case manager and forensic interviewer at Care House.  Ms. Allen listened to the taped conversation between Mrs. Winer and her daughter and reviewed the transcript.  She testified that Mrs. Winer's statements and questions seeking clarification from her daughter were not improper.  Many of the questions were good and did not

6

convey that Mrs. Winer wanted a particular response. While some questions were leading or suggestive, the victim's responses showed that she was neither led nor suggestible. Ms. Allen explained that most suggestible children are under five years old and that research showed that children ages eight to ten were no more suggestible than adults.

At the close of trial, the jury found Petitioner guilty of the charged offenses. The trial court subsequently sentenced him to the terms of imprisonment previously set forth.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the following claims:

I.   The case should be remanded for a new trial because critical evidence of flaws in the child's interview process were not presented to the jury and justice was not served.

II.   The case should be remanded for a *Ginther* hearing where trial counsel failed to properly seek expert services, failed to educate himself on the expertise of witnesses in order to effectively question them, failed to raise admissibility issues pre-trial, failed to rehabilitate the experts, and failed to introduce critical distinctions among the child's interviews.

III.   The trial court erred in excluding Dr. Michael Abramsky's testimony that Petitioner did not possess the characteristics of a sexual predator, which violated Petitioner's Sixth Amendment right to present a defense.

IV.   Petitioner was entitled to introduce evidence of his good character generally and specific traits of good character relevant to the charges and his defense.

V.   Social worker Amy Allen's testimony, admitted as rebuttal testimony, was in fact direct testimony admitted in violation of Petitioner's constitutional right to a fair trial.

VI.   The trial court and the probation department improperly considered Petitioner's failure to accept responsibility where he maintained his innocence and this violated his rights to remain silent and to appeal.

VII.   The presumptive nature of Michigan's sentencing guidelines violates a defendant's rights to a jury trial and to a presumption of innocence.

The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions and sentences. *People v. Winer*, No. 267299, 2007 WL 1138399 (Mich. Ct. App. April 17, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied in a standard order. *People v. Winer*, 480 Mich. 925, 740 N.W.2d 280 (2007). Petitioner also filed a petition for a writ of certiorari with the United States Supreme Court, which was denied. *Winer v. Michigan*, 552 U.S. 1299 (2008).

Petitioner, through counsel, thereafter instituted this federal habeas action raising the following claims:

I.     Petitioner was denied due process of law and a fair trial when the Michigan courts failed to remand his case to the trial court for purposes of establishing his claim of ineffective assistance of counsel.

II.    Petitioner was denied due process of law and a fair trial when the Michigan courts failed to reverse his convictions based upon a refusal to admit evidence as to whether he met the sex offender profile.

III.    Petitioner was denied due process of law and a fair trial when the Michigan courts failed to reverse his convictions based on improper rebuttal testimony.

IV.    Petitioner was denied due process of law and his Sixth Amendment rights when he was denied the effective assistance of appellate counsel.

V.    Petitioner was denied due process of law and a fair trial when testimony about possible suicide was admitted into evidence.

Petitioner subsequently filed an amended petition raising the same claims, but indicating that his ineffective assistance of appellate counsel claims had not been presented to the state courts and requesting that those claims be withdrawn should the Court find them to be unexhausted and cause for dismissal. Respondent has filed an answer to the amended petition contending that it should be denied for lack of merit.

8

III.   <u>**Standard of Review**</u>

      The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this petition after the

AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>           application of, clearly established Federal law, as determined by the
>           Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of
>           the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

      "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412;  *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal

10

law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Analysis

### A.    Exhaustion and the Ineffective Assistance of Appellate Counsel Claims

As an initial matter, the Court must address whether Petitioner has fully exhausted all of the claims contained in his habeas petition. It is well-settled that a prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A Michigan prisoner must first present each issue he seeks to raise on habeas review to the state courts. The claims must be "fairly presented" to the state courts, meaning that the prisoner must have asserted both the factual and legal bases for the claims in the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans*). The claims must also be presented as federal constitutional issues. *See Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). Each issue must be presented to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

Petitioner has not met his burden of demonstrating complete exhaustion of state court remedies. The record before the Court indicates that he did not present his ineffective assistance of appellate counsel claims to the state courts and has first raised them before this Court. Petitioner has thus failed to properly exhaust all of his habeas claims in the state courts before proceeding on federal habeas review.

Generally, a federal district court should dismiss a "mixed" habeas petition, that is, one containing both exhausted and unexhausted claims, "leaving the prisoner with the choice of returning to state court to exhaust his claims or amending and resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510 (1982); *see also Rust*, 17 F.3d at 160. In his amended petition, however, Petitioner acknowledges that his ineffective assistance of appellate counsel claims have not been exhausted in the state courts and requests that the Court dismiss those claims and allow him to proceed on his other, exhausted

12

claims.  Accordingly, the Court concludes that Petitioner's ineffective assistance of appellate counsel claims are unexhausted and dismisses those claims pursuant to Petitioner's request.  The Court shall address Petitioner's remaining, properly exhausted claims.

### B.    Ineffective Assistance of Counsel/Evidentiary Hearing Claim

Petitioner first asserts that he is entitled to federal habeas relief because the state courts denied him an evidentiary hearing to develop the record on his ineffective assistance of trial counsel claims.  He asserts that trial counsel failed to properly seek expert services, failed to educate himself on the expertise of witnesses in order to effectively question them, failed to raise admissibility issues pre-trial, failed to rehabilitate the experts, and failed to introduce critical distinctions among the child's interviews.

The Michigan Court of Appeals denied relief on this claim, stating:

> Defendant also argues that he is entitled to a remand to move for a new trial based on a claim of ineffective assistance of counsel. We disagree because defendant failed to timely file any affidavit or offer of proof in support of the motion to remand as required by MCR 7.211(C)(1)(a).

*Winer*, 2007 WL 1138399 at *2.  The court did not address the substance of any ineffective assistance of counsel claims.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  First, to the extent that Petitioner asserts that the state courts erred in applying Michigan Court Rule 7.211, he has failed to state a claim upon which relief may be granted.  Perceived violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable on habeas review.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Whether the Michigan courts erred in applying Michigan Court Rule 7.211 in denying Petitioner's motion for remand is a question of state law which is not subject to federal

habeas review. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)). Moreover, there is no clearly-established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on state post-conviction review to develop a claim of ineffective assistance of counsel. *Id*; *see also Hall v. Berghuis*, No. 2:07-CV-12163, 2009 WL 2244793, *9 (E.D. Mich. July 27, 2009) (citing *Hayes* and denying habeas relief on similar claim); *Poindexter v. Jones*, No. 1:05-cv-833, 2008 WL 5422855, *4, 21 (W.D. Mich. Dec. 30, 2008). Petitioner has failed to show that the Michigan Court of Appeals' refusal to remand for an evidentiary hearing was contrary to or an unreasonable application of federal law.

Moreover, Petitioner is not entitled to relief on his underlying ineffective assistance of counsel claims. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

With respect to the performance prong, a petitioner must identify acts "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of

14

overcoming the presumption that the challenged conduct was sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

In this case, Petitioner asserts that trial counsel failed to properly investigate and develop expert evidence, failed to educate himself in order to effectively question the experts, failed to raise admissibility issues pre-trial, failed to rehabilitate the experts, failed to introduce critical distinctions in the victim's interviews, and failed to prepare a defense. As explained in more detail by Respondent, *see* Answer pp. 17-20, Petitioner has not shown that counsel was deficient and/or that he was prejudiced by counsel's conduct. To the contrary, the record establishes that counsel

15

listened to the recorded conversations, reviewed the police reports and Care House file, cross-examined the victim, her mother, and the police detective about the incidents, their conversations, and the discrepancies in various reports, investigated and utilized two expert witnesses, presented a character witness, discussed the case with Petitioner and presented his version of events, and provided reasonable arguments in support of Petitioner's defense at trial.  Such actions were reasonable given the nature of the allegations and the circumstances of the case.  Petitioner has not shown what more counsel could have investigated or done which would have made a difference at trial or otherwise benefitted his defense.

Petitioner's claimed deficiencies by defense counsel are conclusory in nature and unsupported by new or reliable evidence which could have reasonably affected the outcome at trial.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).  Petitioner has failed to establish that trial counsel was ineffective under *Strickland* or that he is entitled to an evidentiary hearing on this issue.[1]  Habeas relief is not warranted.

### C.    Evidentiary Claims

---

[1]The Court notes that the Michigan Court of Appeals did not specifically address the substance of Petitioner's ineffective assistance of counsel claims.  Consequently, there is some question about whether federal habeas review remains deferential or is *de novo*.  The Court need not resolve the issue – the result for this case is the same under either standard of review.

16

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in excluding and admitting certain evidence at trial. Petitioner claims that the trial court's rulings violated his constitutional rights. As noted, it is well-settled that alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). In other words, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred in excluding or admitting testimony under the Michigan Rules of Evidence, he merely alleges violations of state law which do not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

### 1.    Exclusion of Sex Offender Profile Opinion

Petitioner first asserts that the trial court erred in excluding defense expert opinion testimony that he did not fit one of the sex offender profiles. Petitioner claims that this ruling denied him the right to present a defense. The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

17

At trial, the defense proffered the testimony of Dr. Michael Abramsky, who the court recognized as an expert in the field of clinical forensic psychology. Dr. Abramsky testified that he had interviewed defendant on nine occasions and had conducted two standardized diagnostic tests in order to determine "characterological deviance." Plaintiff objected to the line of questioning, and the trial court ultimately held that the "witness may not testify ... that the defendant does not fit a drug-the sex offender drug [sic] profile, he is permitted, however, to tell the jury if the Court finds relevant what the profile for a sex offender is."

This Court recently addressed the issue of whether a defendant may introduce expert testimony to establish that he does not fit the "profile" of a sex offender once testimony describing such a profile has been introduced. In *People v. Dobek*, --- Mich App ----;---- NW2d ---- (Docket No. 264366, issued January 30, 2007), slip op p 18, the defendant proffered the expert testimony of a retired professor of psychology and licensed psychologist. Like in the present case, the expert testified that he had performed a series of psychological tests on the defendant, who had been charged with various sex offenses. *Id*. On the basis of the test results, the expert opined that the defendant did not fit the profile of a sex offender. *Id.*

This Court affirmed the trial court's exclusion of defendant's proffered evidence, concluding that:

> [The expert's] proffered testimony regarding defendant's sex offender profile as developed from psychological testing was not sufficiently scientifically reliable, nor supported by sufficient scientific data, such that ... [the expert] should have been allowed to testify. Further, the proffered evidence would not assist the trier of fact to understand the evidence or determine a fact in issue; rather, any arguable probative value attached to the evidence would be substantially outweighed by the danger of unfair prejudice to the prosecution, confusion of the issues, or misleading the jury. [*Id*. at 19.]

The Court reasoned that such testimony would come "dangerously close" to an expert opinion that the defendant is not a sex offender. *Id*. at 22. Moreover, the Court noted that such expert testimony has been almost universally rejected in other jurisdictions that have considered the issue. *Id*. at 23-24. Thus, the trial court here did not err in denying the admission of defendant's expert witness's testimony that defendant did not fit the "profile" of a sexual offender.

*Winer*, 2007 WL 1138399 at *2-3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has not shown that the trial court's ruling rendered

18

his trial fundamentally unfair. While the right of the accused to present a defense has long been recognized as "a fundamental element of due process, " *Washington v. Texas,* 388 U.S. 14, 19 (1967), that right is not unlimited and may be subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). As explained by the Supreme Court, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted). Excluded evidence violates the right to present a defense only if the exclusion is arbitrary or disproportionate or infringes on a weighty interest of the defendant. *Scheffer*, 523 U.S. at 308. In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

In this case, the trial court admitted the defense expert's testimony about his interviews and psychological testing of Petitioner, as well as his opinion that Petitioner was neither aggressive nor assaultive. The court also admitted the expert's descriptions of the sex offender profiles, but merely excluded the expert's opinion about whether Petitioner fit one of the profiles. This ruling was reasonable and within the trial court's discretion under state evidentiary rules. *See* Mich. R. Evid. 702. Moreover, Petitioner was able to challenge the testimony and credibility of the victim and the other prosecution witnesses, to present expert opinion regarding the validity of the child's interviews, to present evidence of his own good character, and to testify on his own behalf

19

concerning the allegations of improper conduct. Given such circumstances, Petitioner has not

shown that the trial court's ruling deprived him of a meaningful opportunity to present a complete

defense or the ability to contest the criminal charges against him. Habeas relief is not warranted

on this claim.

### 2.    Admission of Rebuttal Testimony

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in

allowing rebuttal testimony by Amy Allen during trial. The Michigan Court of Appeals addressed

this claim as follows:

> Generally, "[r]ebuttal evidence is admissible to 'contradict, repel, explain, or
> disprove evidence produced by the other party and tending directly to weaken or
> impeach the same.'" *People v. Figgures*, 451 Mich 390, 399; 547 NW2d 673
> (1996), quoting *People v. DeLano*, 318 Mich 557, 570; 28 NW2d 909 (1947).

> Defendant proffered the testimony of Dr. Katherine Okla, whom the court qualified
> as "an expert witness in the field of clinical psychology." Okla testified that she had
> reviewed the notes taken during the Care House interview of the complainant, the
> police records, the transcript of the preliminary examination in the case, and the
> recorded conversations between the complainant, the complainant's mother, and
> defendant. Okla testified that, in her "professional opinion," there were potential
> negative issues associated with the questioning of the complainant by her mother
> that "very likely tainted [the complainant's] report" of the alleged inappropriate
> contact with defendant. Similarly, Okla testified that there were "big problem[s]"
> with the interview of the complainant at Care House, including the fact that it was
> not audio or video recorded, which hindered the "getting [of] unbiased information
> from a child."

> [The prosecution] moved to call Allen to "rebut[ ] the testimony provided by Dr.
> Okla regarding the issues and concerns of the suggestibility of the questions asked
> by the mom to the child in the taped interview." Allen was employed as a case
> manager and forensic interviewer at the Child Abuse Neglect Council in Oakland
> County, which is commonly referred to as Care House. Allen further testified that
> she had conducted about 4,000 forensic interviews of children aged 2 to 18 as well
> as of developmentally delayed adults and that she possessed bachelor degrees in
> psychology and in behavioral sciences. She testified that, after listening to the
> recorded conversation between the complainant and her mother and reviewing the
> accompanying transcript, she found only "[o]ne" question and answer during the

mother's questioning of the complainant that could be "troubling to the point where it may ... have been suggestive and infected the suggestibility of a child." Allen also testified, upon cross-examination, to specific details of her Care House interview with the complainant, including her belief that the governing protocol did not require the taping of interviews.

The rebuttal testimony of Allen was properly responsive to evidence produced by defendant, specifically the testimony of Dr. Okla. Although defendant insinuates that the trial court's admission of the evidence was error because the testimony could have been offered during the prosecutor's case in chief, this is not the test for whether rebuttal evidence is properly admitted. Rather, our Supreme Court has reasoned that "[a]s long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief." *Figgures, supra* at 399. Because the evidence introduced by the prosecutor responded to evidence raised by defendant during direct examination, the trial court did not abuse its discretion in admitting the testimony of Allen during rebuttal.

*Winer*, 2007 WL 1138399 at *3-4.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, Petitioner's claim that Allen's testimony was inappropriate rebuttal testimony is not cognizable on federal habeas review because it basically involves an alleged violation of state evidentiary rules. *See Slack v. Cason*, 258 F. Supp. 2d 727, 733 (E.D. Mich. 2003); *Plair v. Trombley*, No. 07-CV-10244, 2008 WL 441476, *4 (E.D. Mich. Feb. 14, 2008); *Porter v. Berghuis*, No. 04-CV-71350-DT, 2005 WL 2063946, *6-7 (E.D. Mich. Aug. 23, 2005); *accord Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997) (rejecting claim that habeas petitioner was denied a fundamentally fair trial where prosecutor presented testimony in rebuttal rather than case in chief); *Pickens v. Lockhart*, 802 F. Supp. 208, 217 (E.D. Ark. 1992) (improper rebuttal witness claim was a state law matter, not a basis for habeas relief, where petitioner failed to show that the trial court's ruling violated a specific constitutional provision or was so prejudicial as to violate due process).

21

Second, Allen's testimony was properly admitted as rebuttal evidence to counter Dr. Okla's

testimony and did not violate due process. *See, e.g., Seymour v. Walker*, 224 F.3d 542, 552 (6th

Cir. 2000); *White v. Withrow*, No. 00-74231-DT, 2001 WL 902624, *7 (E.D. Mich. June 22, 2001)

(petitioner's due process rights were not violated when the prosecution "split the proofs" by having

a witness testify in rebuttal rather than case in chief). Petitioner has not shown that the admission

of Allen's testimony violated any clearly established constitutional right or otherwise rendered his

trial fundamentally unfair. Habeas relief is not warranted on this claim.

### 3.   **Suicide Reference**

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in

admitting testimony alluding to his suicidal thoughts and/or evidence of a possible suicide attempt

following the disclosure of the sexual abuse allegations. The Michigan Court of Appeals denied

relief on this claim, explaining in relevant part:

> Although defendant filed a pretrial motion to suppress the evidence of his alleged
> suicide attempt, it does not appear that the motion was heard and decided by the
> trial court. Thus, this argument is without merit. Nevertheless, the prosecution did
> not attempt to introduce evidence of the suicide attempt at trial. [The prosecution]
> did attempt to elicit testimony as to defendant's "behavior after the disclosure [of the
> sexual assault allegations] c[ame] forward" from the complainant's mother (who
> was also defendant's wife). The trial court ultimately sustained defendant's objection
> to the relevance of the testimony and ordered the jury to disregard it. Defendant has
> demonstrated no prejudice as a result of the trial court's ruling.

*Winer*, 2007 WL 1138399 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable

application thereof. At trial, the victim's mother (who was also Petitioner's wife) testified that

Petitioner expressed suicidal thoughts to her after the sexual abuse allegations came to light.

Defense counsel objected to this line of questioning, and the trial court sustained the objection and

22

instructed the jury to disregard that testimony.  Accordingly, Petitioner's claim that the trial court "admitted" evidence of his suicidal thoughts or his attempted suicide is belied by the record. Moreover, jurors are presumed to following the trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner has failed to establish that the trial court erred, that he was prejudiced in this regard, or that he was otherwise deprived of a fundamentally fair trial.  Habeas relief is not warranted on this claim.

**V.   <u>Conclusion</u>**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims.

23

*Id.* at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims.  A certificate of appealability is not warranted.  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  June 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 3, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager

24